EMMETT D. CHILDERS AND SUSANNE K. CHILDERS, APPELLANTS, V. CONSERVATIVE SAVINGS & LOAN ASSOCIATION, A NEBRASKA BUILDING AND LOAN ASSOCIATION, APPELLEE.

429 N.W.2d 325

Filed September 9, 1988.   No. 86-842.

Victor J. Lich, Jr., of Lich, Herold & Mackiewicz, for appellants.

Thomas E. Johnson and Walter H. Goodwin, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellee.

HASTINGS, C.J., SHANAHAN, and FAHRNBRUCH, JJ., and RILEY and OTTE, D. JJ.

OTTE, D.J.

This is an equitable action for reformation of a promissory note and for a declaratory judgment.

On April 22, 1977, the plaintiffs executed and delivered to defendant their promissory note, which provided in part as follows:

> It is understood and agreed that at any time after the expiration of two years from the date of this note, the Association may increase the interest charged on this note to a rate which is 3.25% per annum greater than the highest simple interest rate the Association is then offering to pay on its regular savings accounts, or a rate which is 2.00% greater than the Association is then offering to pay on its 1 year term certificate or its 2 year term certificate. Provided, however, that the original interest rate plus any increase shall not exceed the then maximum lawful interest rate and further provided the Association will give sixty days written notice to the undersigned of any interest rate increases.

> The rate of interest may be reduced by said Association at any time or times and the amount of such reduction applied upon the amount due on this mortgage note, without prejudice to the right of said Association, to reinstate, without notice, the rate of interest charged before the reduction was granted.

The plaintiffs had, before executing and delivering the note, received a letter dated March 21, 1977, from the defendant, Conservative Savings & Loan Association, advising them that their loan had been approved and stating further:

> The note will provide that two years after your loan is

closed, the interest rate may be increased to 2.00% more than our Association is then offering to pay on either one or two year term certificates or to 3.25% more than our Association is then paying on regular savings, after giving you sixty days written notice.

Along with this letter, the plaintiffs received a truth in lending disclosure statement. This statement included language similar to the above letter. Effective August 1, 1979, Conservative increased that interest rate on the note from the original 8.5 percent to 8.75 percent, based upon the 5.5 percent it was paying on its regular accounts. On January 1, 1982, Conservative increased the interest rate to 10.75 percent, based upon the 12.14 percent it was paying on 1-year all-savers certificates. Finally, on August 1, 1984, Conservative increased the interest rate to 11.5 percent, based upon the fact that it was paying over 11 percent on 1-year certificates.

Plaintiffs first claim that the executed note should be reformed by deleting the paragraph "It is understood and agreed that at any time after the expiration of two years from the date of this note, the Association may increase the interest charged . . ." and by inserting substantially the paragraph from the letter of March 21, as follows: "That two years after the loan is closed, the interest rate may be increased . . .," so as to reflect the true intent of the parties. Plaintiffs further prayed for declaratory relief in two causes of action, the first seeking a declaration that the defendant could only increase the plaintiffs' interest rate one time on the note to be reformed by the court and the second seeking a declaration that an increased rate could not be based upon an all-savers certificate.

The district court, after trial upon stipulated facts, dismissed the action, and plaintiffs appealed.

To reform a written contract for mutual mistake or fraud, the evidence must be clear, convincing, and satisfactory. *Johnson v. Stover*, 218 Neb. 250, 354 N.W.2d 142 (1984); *Schweitz v. State Farm Fire & Cas. Co.*, 190 Neb. 400, 208 N.W.2d 664 (1973). There is no evidence of fraud, and consequently the plaintiffs must rest their claim upon mutual mistake. The very essence of mutual mistake is that the parties have come to a full and complete understanding of all essential

elements to the contract, and then, through error or inadvertence, some language or provision was omitted, inserted, or incorrectly worded so that the contract did not reflect the prior mutual agreement. As stated in *Farmers Coop. Assn. v. Klein*, 196 Neb. 180, 183, 241 N.W.2d 686, 688 (1976):

> To decree reformation of a written instrument for a mutual mistake, equity insists that the evidence of the true intent of the parties must be clear, convincing, and satisfactory, and the evidence must establish that the mutual mistake involved is common to both parties, each laboring under the same misconception.

The plaintiffs offered no evidence to an agreement differing in any respect from the promissory note which they signed. Plaintiffs had no recollection of the content of any oral conversations with the defendant's officers or employees in connection with the loan and did not rely upon any such conversations in connection with their action. One of the earlier declarations of this principle is *Nebraska Loan & Trust Co. v. Ignowski*, 54 Neb. 398, 403, 74 N.W. 852, 853 (1898), wherein this court stated:

> " 'The proof of mistake must be clear and certain before an instrument can be reformed, as the object of the reformation of an instrument is to make it express what the minds of the parties to it had met upon, and what they intended to express, and supposed they had expressed, in the writing. Unless this meeting of minds, and mistake in expressing it, is made quite clear and certain by evidence, the court, should it undertake to reform, might, under color of reformation, make a contract for the parties which both never assented to or intended to make.' The mistake, to be the subject of the reformation, must be not merely the oversight of one of the parties, but such that the deed fails to express what was intended and agreed upon by both parties. . . ."

The court further stated that it would not make the contract include what was intended by one of the parties unless it appears that the other party at the same time had the same intention. The plaintiff Emmett D. Childers was, at the time of the execution and delivery of the note, a practicing attorney in

the State of Nebraska; he had all of the relevant documents for review prior to closing the loan; and he admits that the executed note could imply multiple increases wherein it provides "the Association will give sixty days written notice to the undersigned of any interest rate increases."

The evidence presented by the parties falls short of the burden of proof required of the plaintiffs, and their prayer for reformation must fail.

The plaintiffs further claim error in the ruling of the trial court that interest rate increases could be based upon interest paid by defendant on its all-savers certificates. The note authorizes an interest rate increase of 2 percent greater than "the Association is then offering to pay on its 1 year term certificate," and the only question is whether the defendant's all-savers certificate was a 1-year or 2-year term certificate. The note referred to two different items upon which a rate increase could be based: the certificates or a regular savings account. At all times relevant, a certificate account was "[a] savings account evidenced by a certificate which, if held for a fixed or minimum term, will receive a rate of return greater than on regular accounts." 12 C.F.R. § 526.1(b) (1982). A regular savings account was "[a] savings account that is not a certificate account, a notice account, or a NOW account." § 526.1(d). By definition, the all-savers certificate was a 1-year term certificate. As such, the defendant was entitled to use the interest rate offered on it as the basis for a rate increase.

The final assignment of error presented by the plaintiffs is that the trial court erred in ruling that the defendant was not required to reduce its interest rate when interest it pays on applicable certificates or accounts is reduced.

The note quite clearly states, "The rate of interest *may* be reduced . . . at any time or times . . . ." (Emphasis supplied.) The use of the word "may" in this context can only mean that a reduction is permissible or discretionary with the defendant and is not, in any event, mandatory.

The judgment of the district court dismissing plaintiffs' amended petition is affirmed.

AFFIRMED.